Good morning, Your Honors. May it please the Court, my name is Gary Osborne. I represent Tradewind Products, Inc. I'd like to reserve four minutes for rebuttal. Your Honors, this case turns on one single issue. Whether the facts alleged in an underlying complaint, as well as the extrinsic facts known to Hartford, revealed a potential for covered liability, which triggered Hartford's duty to defend. Now, Hartford promised Tradewind that it would protect it against claims alleging as follows. Infringement of copyright in your advertisement, or in the 2001-2002 policy, on your website. This is an important promise to an Internet retailer like Tradewind, whose principal business is buying wholesale and selling retail via its website on the Internet. Now, in the Guthrie-Renker complaint below, Guthrie-Renker alleged, in paragraph 42, that Tradewind's advertising constitutes copyright infringement. So, on the one hand, we have a promise from Hartford to an Internet retailer to protect it against claims of infringement of copyright in your advertisement, or on your website. And on the other hand, you have an allegation from a competitor that Tradewind's advertising constitutes copyright infringement. Explain to me how the advertising could have constituted copyright infringement. Well, Your Honor, copyright infringement is simply the reproduction of copyrighted work. Right. So did you – were you copying Proactiv's – was your client copying Proactiv's advertisements? We were alleged, Your Honor, to be – Were they copyrighted? I mean, I'm not – I want to clearly understand this. Let me refer you to the allegations of Guthrie-Renker in the complaint. Well, I'm looking at it in paragraph 42. In paragraph – Your Honor, two points. One, we think paragraph 42 by itself is a factual allegation that supports or reveals a potential covered liability. But Tradewind's claim for defense is not based on paragraph 42's allegation alone. It's based also on relevant allegations contained in six other paragraphs of the complaint. Your question is, how was Tradewind alleged by Guthrie-Renker to be using its advertising in a way that infringed the copyright? Right. Well, I'd like you to – to refer you to paragraph 1 of the Guthrie-Renker complaint. There, Guthrie-Renker says it's seeking injunctive relief against Tradewind's continued unauthorized use of Guthrie-Renker's, quote, copyrighted packaging and advertising materials. Well, packaging is some – is excluded, isn't it? No, Your Honor, it's not. Hartford makes the point, look, advertising means packaging. They're one and the same. They're used synonymously. And if that's true, Hartford contends, then the advertising that Tradewind is alleged to have done doesn't qualify as an advertisement in the Hartford policy. But importantly, Your Honor, two things about that. One, the Hartford policy, the 0102 policy, promises to protect us against claims of infringement of copyright in your advertisement or on your website.  During the period of coverage. And that's how you got in trouble in the district court. Well, Your Honor, the complaint does not allege when this advertising is allegedly occurred. It doesn't say. So there's a potential it occurred during the Hartford policy. And California law on that issue is quite clear. And according to Aerojet, the Montrose case, if it's uncertain of precisely when these covered actions occurred, then there's a potential for coverage and this triggers the duty to defend. Did the complaint have copyright registrations attached to it? It did, Your Honor. Yes. Okay. It did. There were four or five copyright registrations attached to it. And that was sent to Hartford as well? Oh, yes. And were they registrations for advertising? I mean, for advertising that Proactiv had done? Your Honor, they were registrations for the labeling on the Guthrie-Renker product. All right? So there were four or five such registrations for different types of labels and different types of products. Two things about that. One, I believe we sent it to Hartford. But, two, Hartford knew about it because Hartford actually defended our co-insured and our parent, Thane International, Inc. For the same conduct? For the exact same conduct. Now, Hartford's saying now it's not based on the same conduct. But there's no ñ it's not based on anything in the record. It's not based on any declarations and any reference to the Hartford letter, which explains why they agreed to defend Thane. In fact, that letter explained precisely why Hartford was agreeing to defend Thane. And what that letter says, Your Honor, is that ñ is as follows, quote, and this is in the record at page 192, ìBased upon the potential allegations of copyright infringement in Thane's advertisements, it appears there may be limited potential for coverage.î Well, Tradewinds was facing the exact same allegations, was covered by the exact same language as Thane. What Hartford is saying now, and what I'm sure you'll hear, is that, well, look, there was an allegation that in January 2001 ñ Outside the period of ñ Outside the period of coverage. Exactly. Tradewinds is not covered. Thane is. But when they agreed ñ And then in 2003, it was different, too. In 2003, it was different. And from August 6, 2001, when Tradewind was acquired by Thane, until August 13, 2002, when the second Hartford policy expired, during that year and approximately six days, there's coverage for Tradewind. But, Your Honor, importantly, when Hartford agreed to defend Thane, they knew that Tradewind had not been acquired by Thane until August 6, 2001, some eight months after the January 01 incident that's described. And the January 01 incident described in paragraph 11 of the complaint makes very clear it's Tradewind that's alleged to have put Guthrie-Renker product on its website, not Thane. And Hartford knew at that time that Thane did not own Tradewind. Thane was not connected to Tradewind in any way at that time. So there's no way that Hartford defended Thane based on that January 01 allegation. There's nothing in the letter that says that. The letter says, you know, it's allegations of copyright infringement in Thane's advertisements, not Tradewind's. But, of course, they have to come up with some reason to distinguish Thane from the one hand, from Tradewind on the other hand. Did you want to save four minutes? I do want to save four minutes. Well, now you've got three. Thank you very much. I don't see it going down. Good morning, Your Honors. Katherine Rivard of Mendes and Mountford Defendants, Hartford Fire Insurance Company, and Hartford Casualty Insurance Company. I think one of the most important things to keep in mind in this case is the difference between inferences and speculation. Well, wait a minute. The California law is that it is possibility of coverage? That's true, but the possibility. Okay, but. Yes. Okay, so inferences you say would be okay, but speculation not? Yes, and I believe that when you look at all of the case law, the difference between drawing inferences and merely speculation becomes apparent. But the word that they use is any potential for coverage, which means you have to think of all hypothetical ways in which this could be alleging a claim that would be covered by your insurance policy. The hypothetical ways, as this Court has said in upper deck, the hypotheticals need to be grounded in the facts that are specifically alleged in the pleading. Even if you have notice pleading? Well, except that, yes, I don't think notice pleadings makes all that much difference. I mean. You say the specific facts. So what are the facts that limit this to the exclusion of coverage? Yes, the express facts. The express facts that were alleged are as follows. Well, why don't you go to the paragraphs so we can not have your characterization. We don't want to speculate. Okay. The specific paragraphs are. The key paragraph is, of course, paragraph 42, which states the general claim. So what limits that such that the coverage is excluded? Right. And that's the point, is that 42 makes a kind of a general statement. Well, that's okay. That's right. That's what it does. That's what they have to go on. That's what they're defending against. But a general statement does not determine coverage. Counsel, just so I know, this is not the first coverage case we've ever had. I'm just trying to organize you so we can figure out where you're going. And we know paragraph 42 is in the complaint. It tells what the nature of the case is about. So how do we get it back down to your point, which is on the face of the complaint, without speculating, we can tell that it's limited to the product itself, which is within the exclusionary clause. So tell us where in the complaint that that's so clear. Because the factual allegations that describe the advertisements are in paragraphs 11 and 12. Okay. Paragraph 11 and 12. Paragraph 11. Paragraph 11 of the complaint alleges that there were copyrighted materials posted on a website in January 2001. Outside the period of coverage. Outside the period of coverage. Tradewind did concede that it is not insured for any conduct that it undertook in January 2001. And all it says is that in or about January 2001, the plaintiff first became aware. It doesn't say that that was the only time they ever did it. Well, that's true. But that's where the Ringler case comes in, in California. And that is where the facts that would establish an exclusion from coverage are apparent on the face of the complaint, then it's incumbent upon the insurer to come up with a little bit more information to overcome this. In Ringler, it was a defamation. And the complaint in Ringler expressly alleged that the insurer's defamation had begun before the policy period. And the court in Ringler said, well, wait a minute. Since it's alleged on the face of the complaint that the conduct began prior to their defamation, the insured needs to come up with some additional evidence that the defamations that perhaps, yes, perhaps the defamations continued into the policy period, but the insured has to come up with something to show that they were new or different or the complaint would have to allege a new and different defamation. If we're talking about the conduct in 2001, which Tradewind admits is not covered. What about the case Atlantic Mutual Insurance Company v. Lamb where it says, you know what it says, it says that even if you have a defense at first publication, that's a defense to indemnification. It's not a defense to the duty to defend. Well, Atlantic Mutual v. Lamb is very different because in that case the complaint did not say at all when the defamation was. And the insurer was relying on extrinsic evidence.  But this complaint, counsel, if you look at this complaint carefully, it doesn't say this is when the copyright infringement took place. It says this is when Gunther Rinker became aware. Well, if they became aware, then certainly it would have happened either in January 2001 or even before that. And Tradewind never became an insured until August 2001. Well, then there's allegations of similar commercial trespass in 2003. The allegations of what happened in 2003 are the counterfeit products that were put on the market with the labels that infringed the copyright. So this kind of bridges the period of coverage, though, doesn't it, 2001, 2003? And aren't there allegations of continuous behavior? If the only behavior that is alleged to have begun before is the website and had that begun when Tradewind was an insured, it would be a completely different story. But under Ringler, because Ringler says if the conduct begins prior and it's alleged to have begun prior to coverage in the complaint, then you need something more, some extrinsic evidence. The insurer would have to come through and say there is something different, some different thing that is potentially covered. Here, the supposedly different thing is the packaging labels. And we know that those are not covered because the label at the labels are not, do not qualify as advertisements. So you're taking, you're taking the January 2000, the paragraph 11 as the, not only the event that put them on notice, but the only event that transpired between then and February 2003? That's, no. And then the 2003 is the inception of the counterfeiting, and that's outside the coverage period. No. Actually, we're not saying that what happened in 2003 was outside the coverage period. What happened in 2003 was alleged to have been discovered in 2003. That could have started before and during the coverage period. But the reason why the allegations of the 2003 conduct are not covered is because they don't fit within the definition of an advertising injury, regardless of when they happened. Counterfeiting isn't. Well, the packaging. It's only an allegation that the copyright infringement was the product packaging and labeling. And that doesn't qualify as an advertisement under the definition of the policy, and it's a fact that was conceived. But does it qualify as an advertising injury? Yes. But the advertising could be contained in the label, and the injury could be the copyright injury. Well, the advertising injury is defined in the policy as a number of different offenses. The one that concerns us is copyright infringement in an advertisement. So what you have to have is the actual infringement must be in a medium that, in fact, qualifies as an advertisement under the policy. Two media are expressly alleged in the complaint. One media, one medium is the website. But because that began prior to Tradewind becoming an insured, that on the face of the complaint triggers a prior publication exclusion, which under Ringler, which Ringler stands for the proposition that when the publication begins prior to the effective date of coverage, and it's alleged on the face of the complaint, that does not trigger coverage. The second medium in which copyright infringement was alleged to have occurred was the product labels. Now, those happened during the period of coverage. The problem is, is that the product labels are not advertising. And, in fact, Vane is a sophisticated company. It, you know, it at all times knew what advertising, what media it used. It never even submitted them. And since it was just, it was not on the face of the complaint. All right. Thank you, counsel. Thank you. Let me direct your attention to what the judge said. Although plaintiff places a lot of emphasis on paragraph 42, this paragraph does not suggest a covered liability. Not only does it simply say advertising without reference to any facts, but it is listed under Guthe-Renker's fourth claim entitled Copyright Infringement, Ray Product Packaging. If anything, this reference to advertising refers to plaintiff's, to advertising on plaintiff's packaging was plaintiff has conceded, does not create a duty to defend. So 42 may say one thing, but in context it seems to indicate another. Your answer to this is what? My answer to that is our claim for defense is based on the allegations, not just in paragraph 42, but in six other paragraphs. And I want to identify those. Paragraphs 1, 6, 24, 61, 62, and 63. In paragraph 6, Guthe-Renker alleges that Tradewind is operating via a California-based website called youcansave.com. Tradewind is an internet retailer. In paragraph 1, Guthe-Renker alleges that Tradewind is continuing to use Guthe-Renker's quote, copyrighted packaging and advertising materials. In paragraph 24, Guthe-Renker alleges that Defendant's ellipsis, advertisement and sale of the counterfeit Proactive Solution products and related packaging and labels are likely to cause confusion. So here, Your Honors, Guthe-Renker is not using product packaging and advertisement or advertising synonymously. They don't mean the same thing. We're advertising, in our advertisements, that includes the labels. Your Honor, if we post on our website a picture of the product with the label on it, that is infringing Guthe-Renker's copyright. And I want to point something out. When Hartford's counsel defined advertising injury, note something. She said advertising injury, for purposes of this policy, is infringement of copyright in an advertisement. Not complete. In the 01-02 policy, it's infringement of copyright in an advertisement or on your website. Is there any potential that Tradewind did what Guthe-Renker alleges we did, i.e., were an Internet retailer that has used this advertising materials whose advertisements are causing confusion in the public? Paragraph 61, 62, and 63, which I referred to earlier, those allege that Tradewind is aware of Guthe-Renker's relationships with customers, prospective customers, throughout the United States. 62 says — What behavior did your side concede was not covered? What's not covered is what's described in paragraph 12. What's described in paragraph 12, which is Guthe-Renker discovers that there's a product being sold at an as-seen-on-TV store in Santa Ana. Putting the product with the labeling on the product on a shelf, that's not covered. Why? Because it's not an advertising injury. It's not copyright infringement in an advertisement, because it's just the label, or on your website. The conduct in January 01, not covered, because it's before we became an insured. But again, as you pointed out, Your Honor, there's this — there are these bridging allegations of continuing conduct, continuing advertising. And Guthe-Renker alleges in paragraph 62 that we have published something that has interfered with its relationships with customers and prospective customers across the United States. Is it potential — is there potential, or is it possible that we did so, as Guthe-Renker alleges we did, i.e., by being an Internet retailer, continuing to use their advertising materials and product labeling on our website? All right. Thank you, counsel. Tradewind v. Hartford will be submitted. I'll take up U.S. v. Peterson. Thank you.
judges: Trott, Wardlaw, Fisher